I did, but they're still there, so that's all right. We're ready, Mr. Luther. Yes, yes, Your Honor. Chief Judge, Your Honors, may it please the court. This appeal affords this court the opportunity to correct the legal error committed by the district court in using hindsight bias, if you will, in finding the case below an exceptional case under Section 285. And it also allows the court to correct the way the award of $820,000 in excess of that in attorney's fees when it granted a motion to dismiss at the early stages of this case for lack of standing while depriving Max Sound the opportunity to have access to the billing records that were used to base that. Where did you object to that? On the last page of our response, it was on page 15, but let me find the appendix number. What happened was Google submitted only the declaration of Ms. Schanberg, which had a very high level description of the nature of the work performed and the lawyers who performed the work without any details. And I think it's in volume three, probably. Excuse me, I'm sorry. You're referring to 1515? 1515, let me see. It was on the last page. Yes. And what happened was that Google only submitted the Schanberg declaration, which didn't contain any real detail about- I'm sorry. Oh, in there? Where is your objection to the court's order which required a production of the bills to occur in camera? Where did you object that in camera it wasn't fair to you that you had a right to refuse? We didn't have an opportunity to object to that. He just issued the order. So that was done on his own at the request of Google. Google said in their original- Thirteen months elapsed between when the court issued an order requiring production of bills for in-camera inspection and before he issued an order awarding fees. So I'm not certain where you were for 13 months such that you're telling me you didn't have an opportunity to object. We were relying on our objection on 1515 where we said, moreover, Google suggests that if the court orders production of Google's time records, it should be allowed to produce those records in camera. But Maxown must see the supporting- I'm sorry. I can't find where you're reading from. 1515 footnote number 14. It's about a half or a quarter, third of a page footnote. Oh, I think I have it wrong. Oh, no. There it is. I'm sorry. Do you have it, Your Honor? So you're in the footnote number 14. Yes. Okay. And keep in mind that this was just a suggestion by Google that if you don't think what we've submitted is enough, then allow us to go submit these records in camera. So this was prior to when the court issued- This was prior to when the court issued the order. Yes, yes. So before the court issues an order in a footnote buried at page 22 of your thing, you say, by the way, we should get to see these things. Then the court says, I'm going to order in-camera review. The court didn't address this or understand this to be an objection to its order, nor did you then make one, nor do I think it would have been futile if you made one because this is buried in the middle of nothingness. I didn't even know this was here. Well, it's in our brief, but most of our- No, it's in a footnote in your brief. Yes. Buried in a very long footnote in your brief, a single sentence. Yes, but it's very specific where we say that, no, this would be improper. We're entitled to view these things and object and challenge those documents. And this was, again, in response to- Where does it say it would be improper if you didn't get to see it? It should be allowed. Here we go. But Maxound must see the supporting time records to be in a position to challenge their reasonableness. You say, I must see something. That doesn't say it would be improper if I didn't allow you to see it. Well, we were- My children use the word must all the time. Well, I can't speak for your children, but I can speak for us. Let me just point out also that the kind of oddity, we have our own rules about arguments made in footnotes. I know. But this seems to double down on how buried any information can be in a footnote. Because what's being footnoted has nothing to do with any of that. It's a sentence that deals with 1927 sanctions. Well- So- I disagree, Your Honor, because this talks- Again, let me make my point on this. Google did not submit any records with its motion. They submitted this very thin Schanberg declaration. And in a footnote of sorts of their own, they said, well, if you don't find that acceptable, then let us submit detailed time records. And then there was a hearing to be held on this motion. And I think a few days before the hearing, the court canceled the hearing and simply said, submit your time records, and I'll look at them. In camera. In camera. So we were going to certainly- Why didn't you object? Because the hearing was canceled. I mean, this was- Do you have a computer? Do you own one? I sure do, Your Honor. How about a piece of paper and a pen? You couldn't have written an objection down and gotten it to the judge? There's no mechanism for filing documents? But I think it's very clear that we objected to this requested procedure. It's definitely not clear to me. Okay. Well, I- Well, the other tell kind- I'm sorry. Go ahead. You're referring to this footnote and obviously getting yourself into a little bit of a box. But there's text on lines 9 through 13 that addresses this. Yeah. I'm sorry. Thank you, Your Honor. What's the consequence of that? Again, this backhanded request by Google wasn't even a- It was, oh, by the way, if you don't think we've done enough. They had the obligation in their motion to submit all of the proper evidence that supported it and not to say, if we didn't, if we submitted an inadequate declaration, give us a break and let us submit some more records. And we were saying, no, that's wrong. They have an obligation in this motion to back it up, back up the number. I don't understand. I'm reading the paragraph that Judge Lynn was just- In the event the court were to find the case exceptional and the court were to exercise its discretion and award attorney's fees, Maxound requests the court to order Google to produce detailed billing records so that it can be given the fair opportunity to review the records. Yes. It being Maxound. And meaning the court. No. It being Maxound. Maxound requests the court so that it can be given a fair opportunity to view the records to determine whether Google's request of fee appears reasonable. I'm kind of curious here. Are you the one who determines whether it's reasonable or is it the court that makes that determination? Well, the court makes that determination. But we have a say on that. We have an opinion to give on that. Do you really think the best reading of this sentence is that the it means Maxound because it can be given a fair opportunity to review the records to determine whether, who makes the determinations here as to whether Google's fees are reasonable, you or the court? The court makes the binding determination. So we're talking about it being given. I mean, I read this sentence. And I guess part of the tell here for me, even if I thought this was kind of close, is did the district court in its ultimate order, which was very lengthy, resolving all of this and discussing in detail its in-camera review, did it respond to any suggestion or argument that this was improper? Well, that's why, you know, I start with the district court. And when he or she does not say anything, it leads me to wonder whether or not someone had lodged a clear objection to what he was doing. So if you think he was so clear that you had a fair objection going on in-camera review, don't you think the district court would have at least referenced that? Well, the district court didn't reference a lot of things that we argued in our papers in the court below. So I'm not sure. I understand you're saying that that would beg the question, well, did the court get adequate notice? And I believe that that paragraph on page 22 or 1515 in the footnote clearly said, we don't think it's proper for the court to look at these things in-camera. And then the hearing was – Just out of curiosity, have you challenged Local Rule 54-5b-2 for the Northern District of California? Have we done what to it? Challenged Local Rule 54-5b-2, which expressly states the court can order the production of the detailed bills for in-camera inspection? No, we haven't. But that doesn't overcome the due process clause of the Constitution. The court, by local rule – So there's a local rule in the court that tells the court to do the process exactly the way they did it in this case. You're saying you objected to the use of that local rule without ever mentioning it in your briefs? And neither did Google mention it in its briefs either. Well, because did it understand you to be objecting? Did it respond? I was objecting to it. Did Google respond to what it understood to be an objection by you to in-camera inspection? It didn't say anything about its in-camera inspection request. It looks like nobody understood that sentence in your footnote as being the objection that you – I think that the paragraph does say that if you're going to allow this, we need to be given a fair opportunity to review. The court decides, but we have to have an opportunity to review it and object and complain about whatever they're using to base that $820,000 fee award. And so the court is not the it there. It is us, and I apologize if it wasn't clear enough. But we clearly were objecting to this procedure as unconstitutionally depriving us the chance to be heard and complain about any of the billing records in this case. And the $820,000 – You just said we clearly were objecting to the constitutionality. Yes. Really? Where do you use the word objection or constitution or due process in any of your papers before the court? Fair opportunity to review the records is the due process right we're seeking to enforce here. We didn't say it would violate due process. It would deprive us of a fair opportunity, which is what the due process clause is guaranteed to protect. Well, that assumes that you said it was very clear. It assumes the clarity of the little debate we were having earlier about who's given a fair opportunity, i.e., who determines whether it's reasonable. So I mean, I'm still hung up on what I think is the best reading of the sentence, which isn't clear at all. So I'm left with what's in the footnote. Well, clearly – But you're telling me back to the rule that Judge Moore was citing. Yes. So this rule says it gives the court discretion as the court deems appropriate. Yes. They can do in camp or not. So you're saying that if the judge ever orders, exercises the authority that he has under this rule, that's not consistent with the Constitution. It's a violation of due process to keep this evidence secret and rely on it and base your attorney's fees award on detailed billing records that the other side has no chance to review and critique. That is a fundamental violation of the due process right, and the court can issue all the local rules at once, but that doesn't supersede that constitutional right, which we were deprived of. But to get back to the merits on the exceptional case, the court consistently simply said, in rejecting our arguments about the strength of our case, although we lost the issue on standing, but on the strength of our case, the court simply said, I've previously considered that in my dismissal order. I don't need to hear arguments about this again. This doesn't have to be re-litigated. But by doing that, the court equated the success of our arguments with the strength of our arguments, and the record is replete, both on our alter ego and our agency arguments in support of standing. There was substantial evidence to support that argument, and the court simply gave it the back of the hand by saying, I've already considered this. I don't need to hear it again. It's done. I'm looking at the court's discussion on this, which spans quite a few pages, right, and has quite a bit of detail. I mean, the judge didn't summarily say this is an exceptional case because of what I said in the dismissal. It goes through quite a lot of detail in its analysis, right? I disagree. The only argument it made ultimately on our alter ego and agency arguments is that on alter ego or on agency, the court said that the showing did not overcome the presumption that VSL and Vedante are separate entities. There is no presumption of that. Can you direct me to the page in the district court opinion that you're referring to? Yes, Your Honor. Is it 13? Sorry? I have it here somewhere. I think it's 13. Yes. Yes, Your Honor. Yes. Yes. Exactly. Yes. And so there is no presumption that's applicable to an agency argument. We argued that VSL acted as the agent of Vedante in granting the license to the 339 patent, and I might note the court did not dispute that VSL was acting as the agent of Vedante in granting Mack Sound the right to enforce the European 277 patent, and so the very same agreement did get VSL was the agent or sub-licensee of Vedante when it granted the rights to the EP 277. All right. Well, I'll just point out to you that as I read this paragraph, and there's a lot of detail here regarding your suggestion about overcoming the presumption, the court goes on to discuss that point in a lot of detail, citing a lot of docket numbers here discussing that. So he didn't just say you haven't overcome the presumption and destroy it, right? He ignored the agency issue completely. He simply argued about the separate entities and that there is evidence in the record of there being separate entities. That has nothing to do with the agency argument we made, and again, given that Vedante designated VSL as the agent in granting the license to the EP 277 patent, how could that not be persuasive evidence that it did the same thing regarding the 339 patent? The court equated agency and alter ego and simply said, well, in the dismissal order said, I'm not convinced you've shown that it was the alter ego. In this order, in the attorney's fees order, it simply said there was evidence of separateness among the parties. We lost that issue already. I'm not going to relitigate that, but the issue is here, did we have enough evidence to make our argument about alter ego not objectively baseless? And I submit, yes, we did. We lost the argument, but success is not the same thing as strength. Okay, we've exceeded, you've used all your time, so I'll give you a little bit of rebuttal. Thank you very much. May it please the court, the district court's judgment should be affirmed. This court reviews an award of attorney's fees under Section 285 by applying the highly differential abuse of discretion standard. Indeed, as this court has made clear, deference is the hallmark of an abuse of discretion review. And a large part of that deference derives from the recognition that when, as here, a district court judge presides over a case for a prolonged period of time, that judge is in the best situation to assess whether a case stands out from others and is exceptional. And that is precisely the situation here, as Judge Davila lived with this case for nearly three years. During that time, Judge Davila issued an order dismissing this case for lack of standing. In doing so, Judge Davila addressed agency and alter ego arguments in his dismissal order, and he found that based on the entirety of the record, there was an inescapable conclusion that Max Sound lacked standing. After this court affirmed that order, Judge Davila considered the totality of the circumstances and issued a detailed opinion that spanned 24 pages and found that this case was exceptional for two separate and independent grounds. Can I just move you on to the in-camera issue we were discussing with your friend? Was there a reason, I mean, is there a sort of confidentiality or privilege question that inures to the kind of information the district court reviewed in camera? Absolutely, Your Honor. I believe that's why the Ninth Circuit and the Northern District of California have Rule 545B2, I believe Judge Moore noted, because inevitably, or most likely, in any attorney billing records, there will be embedded attorney-client communications or work-product doctrine. And that's why 54B52 indicates that a judge can request an in-camera inspection and do so to confirm statements of work and details of work that were set forth in a declaration supporting attorney's fees. And that's precisely what the district court did here. But in Yamada, the Ninth Circuit said that due process requires access to timesheets to support the fee order, and then they go on to explain that there could be in-camera submission of the specific records for exactly the reason that you're articulating attorney-client privilege concerns if the declaration describing the work relates, this is a quote from the case, relating to the case and the invoice summaries listing the amount of time that work took. So I guess my problem for you is that Yamada required you to produce a lot more than what you produced, it seems to me, to them. I'm not objecting to the idea that the district court can, in certain circumstances, perform an in-camera review of the detailed billing entries, but you gave them a very cursory declaration that, for example, there are several cases out of the Ninth Circuit, I don't know how to say this one, and each of those cases had far more detailed invoice summaries, which is required by Yamada, than what you produced in this case. So I'm concerned that there's still a due process problem in this case with in-camera review because they didn't have access to anything approaching the level of detail that the Ninth Circuit found sufficient in other cases when in-camera review occurred. Your Honor, putting aside, I think, the waiver issue, but speaking to the substance, the declaration that Ms. Shanberg submitted. Can you tell me what page in the appendix it is? Let's look at it. I believe it's 15... I think it's 1301. Yes, 1301. Thank you, Your Honor. And pages 1302 and 1303, where Ms. Shanberg sets forth eight different categories of activities that were performed by the attorneys working on that, on this case. Yeah, but it seems to me what seems to be the gap, if any, in this information, is allocating their 1,500 hours here, 1,400 hours, to allocating a portion of that, what portion of that time related to each of these, however many, seven categories or eight categories that you're listing here. And don't you think that's the kind of information that seems to be required in the cases that Judge Moore was citing? No, I don't. Actually, I think certainly could the information have been richer or divided into a finer granularity? That's certainly possible. But I think this fully complies with local civil rule 54B, which requires to set forth the work done and the time spent and the attorneys who spent on it. Without any correlation between the categories of work performed and the hours expended by each attorney, it's impossible to make any assessment of whether the time was reasonable. I mean, for example, Ms. Shanberg spent 172 1⁄2 hours on this case. We have no idea what she did. No idea. No idea whether she participated in one, two, three, or all of these categories. That is correct. And to the extent that additional detail would be required to correlate how many hours each individual attorney spent in those categories, that was part of the in-camera review that Judge . . . No, no, but we're not even . . . I don't know what Judge Lin is saying. But I'm not even suggesting that you have to identify exactly the number of hours that each attorney necessarily spent in each of these categories. But the other side doesn't even know if you're allocating 1300 hours to discovery and very little to the others. So even how would at least an estimate of the amount of the 1400 hours divided up by the categories, how would that push up against the concerns that you've expressed that I think are real sometimes in terms of privilege or confidentiality? That wouldn't be a problem, would it? I suppose . . . no, again, could it . . . I don't believe that the rules would require more detail, but certainly more detail could have been given. And I suppose had they not waived the burden . . . When you say, I'm not sure if the rules require more detail, it's not the rule, it's due process. They haven't alleged, and I think it's really clear, they haven't alleged the Northern District violated its rule. They've alleged that what they did in this case violated due process, and that's the hurdle you have to overcome.  is not an answer to the question. I don't believe that the records here . . . Timesheets to me imply a breakdown of time for task. What do they mean to you? They mean specifically that. So timesheets is the exact language used in some of the cases. Where are their timesheets in this declaration? There are no timesheets. They were submitted in camera. The timesheets were submitted in camera. Yamada says expressly, the due process clause requires opposing counsels to have access to timesheets relied on to support the fee order. I also believe that in footnote 7, Yamada addresses the circumstance that we have here. I've got footnote 7 right in front of me, so please go ahead and tell me why you think so. Well, there it made clear that a route where the court did conduct it in camera view was appropriate. In circumstances where they had summaries relating to the work and the time spent that had been extracted from the privileged material were accurate. Right. So where do you have the time spent on your particular work in this? That's what the footnote said was adequate. I don't see that in yours. The particular work, no. The overall hours in a description. $800,000. You're talking about $800,000. Right. And $800,000 in part, there's 24, 23 different categories of tasks performed with respect to the amount of money. So I should just conclude that, oh, my gosh, you listed a lot of bullet points, and therefore it's worth $800,000? No, but that's precisely why you have in camera review, that the district court can corroborate. The process requires them to have an opportunity to say whether it's reasonable or not. How do they have an opportunity to meaningfully review this? Well, they could have requested a redacted version, which they didn't. They could have objected to simply providing an in camera review rather than requesting some sort of review of the timesheets that would have removed or excised any attorney-client privilege or product. They didn't do that. Do you have anything to add to the waiver discussion we had? No, I don't. Did you understand their argument at page 1515 to be an objection or at least an assertion that in camera review would be improper, that they had a right to see the time records? What did you understand? Or what did your client understand about what they were arguing on page 1515? What I understand them to argue is they would like to see the records. They think they were entitled to the records. But when the court formally requested an in camera inspection, they were silent. In fact, as Your Honor pointed out, they were silent for that 13-month period where they could have said, if Your Honor is now requesting an in camera review, we would like to see a redacted version so we can verify that for ourselves. That never occurred. Well, they didn't follow up after his ruling is basically what you're saying. But did you understand the statement they made at 1515 to amount to an objection to in camera review in this case? Yes, and I think they objected to in camera review at that time to the extent they said that it would be improper. But clearly in camera review is proper under Rule 54. So you don't think that their generalized objection to in camera review was sufficient given that in some circumstances in camera review is proper? Correct. It's proper and contemplated by Rule 54. Help me understand the timing. Did they make that objection on page 1515 prior to receiving this declaration that was submitted or after receiving it? They made that objection after because the declaration came first, then they objected, or they had that argument in footnote 14, however you want to characterize it. Then Judge Davila requested an in camera inspection of the documents. Can you just insert – your friend mentioned that there was a hearing that was canceled in the interim, so you didn't tell us about that. Yes, I believe the court was going to have a hearing on the attorney's fees issue, but then the judge canceled the hearing and requested in camera review. What, he issued an order? Correct. Because you guys did respond, you know, to this as though you thought it was an objection. In our response. Yeah. Right. So, you know, I don't read – I didn't read 1515 as being very clear, but you all did respond to it expressly on page 1610. Your opponent on the other side apparently didn't have that at his ready when I was asking the questions, but you did respond to it. Are you referring to lines 13, 14? No, I'm – as such, lines 11 and 12, as such, Mack sounds contention that in camera review should not be allowed as basis. Correct. That's correct. I think that's consistent with the local rules. Up above, you argued it as well at lines 7, 6, 7, and 8. What was the timing of this? This thing was July 28, 2016, so when Judge Moore and I interrupted her was trying to get from you the sequence of events. So, they filed this 1515 document, and then was this before the hearing? Did you file this before? The briefing was complete, so I believe this was our reply brief, which is 1610. Okay. And at which point the court decided to determine the issue on the briefing, but requested an in-camera review of the billing records. Just so you know for the future, there is no doubt what you did here is inadequate to me to satisfy the concerns of due process. No doubt. The only chance you have of prevailing in this case is if I decide that they waive this argument for purposes of appeal by virtue of not having objected after the court issued its order because I don't think the court understood their early objection to be the kind of objection that might have been necessary in this case. Namely, the declaration is very cursory. We haven't been given enough. Yes, in-camera review might be appropriate in some circumstances, but not in these because they didn't give us enough information. So, that's your only chance of prevailing. And I say that to you so that hopefully you and your clients will understand in the future that you can't turn something like this over and believe that it is going to satisfy the requirements of due process. So, if you do walk away with a victory, let them listen to this oral argument or refer them to it in the future if this is all they want to turn over next time. Understood, Your Honor. Are there any further questions? I respectfully give the court back its time and request an affirmative. Thank you. You've used all your time. We'll give you two minutes if you need. Thank you, Your Honor. I appreciate that. A couple points. Just to respond to what was said. In terms of the notice, if you look at page appendix 1515, I think you have to read the sentence or the paragraph in the main text in the context of the footnote that appears right below it where Mack Sound argued that it, there clearly, it should be allowed, but Mack Sound must see the supporting time records to be in a position to challenge the reasonableness. But the rules and due process don't require that you get to see the actual time records. Detailed summaries would be sufficient. You may not have had those in this case, but you didn't make that objection. Well, but the key is that what we contended was that what they submitted was clearly inadequate. So on that record. Where did you contend that? Oh, in our reply. Tell me what page. Here we go. The previous page. Google has not provided adequate documentation of its requested fees. Google's. Sorry, can you please tell me what page and line number? Page, well, it's 1514 of the appendix. And it's that from the line 14 on that page to the end of the next page where we say is that they've got the burden, that's on line 25, where the documentation of ours is inadequate, that's on line 28, the district court may reduce the award accordingly. No, but here you're arguing to the court that the meager evidence they submitted is not sufficient to have any award. Yes. This I don't understand to be an argument that you are being deprived of an opportunity to respond to the reasonableness of their request. That's right below it, Your Honor. So one, we complain that what they submitted is inadequate. Where is it right below? What I'm saying, there are two points. One is what they submitted is inadequate. They have the burden. We don't have to. But in camera, you could hear that. Yeah. No, no, I saw. I thought you were saying that we didn't adequately say that their submission was on its face inadequate. We did say that. No, you're saying it's inadequate for an award. I'm saying inadequate for you, it is a matter of due process, to be able to challenge the reasonableness. Well, we were challenging it in total, if you will, that what they submitted from front to back, everything there, that's inadequate. But you won that battle. The question becomes a different kind of question with respect to the adequacy of the camera review. They can't cure that by submitting these documents in camera, which is the documents that really supported the award amount. You should have objected. I thought we did well enough. And then the hearing, just to make a, the hearing was scheduled for August 24th, and we were going to make these arguments there as well. And you should have submitted them in writing. If you felt like you needed to make them at the hearing, then I don't understand why you didn't submit them in writing. 14 months of time passed. We only had the chance to file this response. The court didn't grant their order until August 19th of a month later. There were 14 months between when the court ordered in-camera review and when it issued an opinion. You had 14 months during that time to object. We felt we had made the point that that would be improper. They understood it as well. Thank you. We thank both sides in the case to submit it.